IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SETH WILLIAMS,                  : | |
|     Petitioner               : | |
|                                               : | No. 1:10-cr-341 |
| v.                             : | |
|                                               : | (Judge Kane) |
| UNITED STATES OF AMERICA,       : | |
|     Respondent              : | |

**MEMORANDUM**

Before the Court is Petitioner Seth Williams ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 179.) For the reasons that follow, the Court will deny Petitioner's motion.

**I.   BACKGROUND**

On March 21, 2013, the Court sentenced Petitioner to a term of imprisonment of three hundred and sixty (360) months followed by a term of supervised release of three (3) years after Petitioner was found guilty of possession with the intent to distribute cocaine and cocaine base; possession of a firearm during a drug trafficking offense; and possession of a firearm by a previously convicted felon. (Doc. No. 155.) Petitioner filed a notice of appeal on March 28, 2013 (Doc. No. 157), and the United States Court of Appeals for the Third Circuit later affirmed the judgment of conviction and sentence (Doc. Nos. 169, 170). The facts underlying Petitioner's arrest and conviction are well known to the Court and were summarized by the Third Circuit on appeal as follows:

> On October 5, 2010, police officers responded to reports of a robbery at Williams's apartment. The officers surrounded the apartment and three individuals surrendered. Williams, whose hands and feet were bound with duct tape, was the apparent victim of the robbery. While conducting a protective sweep of Williams's apartment, officers noted a strong smell of marijuana and, once a warrant was obtained, searched the apartment. Officers found $6,960 in cash, three loaded handguns, three boxes of ammunition, small packets of marijuana, cocaine base,

small 4 glassine baggies, a razor blade, a spoon, and a digital scale. Before trial, the District Court held a two day suppression hearing but denied Williams's motion to suppress, finding the initial cursory search to be a justified protective sweep and the subsequent search executed according to a valid search warrant. At trial, the Government presented various witnesses, including a witness who testified she arranged the robbery, had seen Williams selling cocaine, and had traveled with him to buy cocaine in New York, and a witness who testified he sold Williams one of the guns found in his apartment. The officers who responded to the robbery testified to the strong odor or marijuana, the process of obtaining a search warrant, and what they found during execution of the warrant. The Government offered expert testimony regarding the laboratory analysis of the drugs found in Williams's apartment and the interstate element of the drugs, guns, and ammunition found in the apartment. On September 27, 2012, the jury found Williams guilty of all but the user of a controlled substance in possession of a firearm charge. Williams was designated as a career offender because he was at least 18 when he committed the instant offense, the instant offense was a felony controlled substance offense, and he had two prior felony controlled substance convictions, and he was sentenced on March 21, 2013, to an aggregate term of 360 months in prison.

See United States v. Williams, 570 F. App'x 137, 139 (3d Cir. 2014).

Following the Third Circuit's affirmance of his conviction, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 171.) The Clerk of Court received Petitioner's motion on September 14, 2015. (Id.) The next day, the Court issued an Order directing Petitioner to complete and file a Notice of Election form within forty-five (45) days of the date of that Order. (Doc. No. 174.) On October 26, 2015, the Court received an unsigned copy of the Notice of Election form with a checkmark next to the option reading, "I have labeled my motion as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. I choose to withdraw my motion so that I may file one, all-inclusive motion under 28 U.S.C. § 2255 within the one-year limit for filing such a motion." (Doc. No. 175 at 1-2.) Along with the Notice of Election form, Petitioner included a typewritten note indicating his "confusion about which election is best." (Id. at 3.) On March 21, 2016, Defendant filed the instant motion to vacate pursuant to 28 U.S.C. § 2255, which is identical to the previously-filed petition. (Doc. No. 179.) The Court ultimately determined that principles of equitable tolling applied to the

instant motion, deemed the motion timely, and directed the Clerk of Court to serve a copy on the Government.  (Doc. No. 188.)

In his pending motion to vacate, Petitioner asserts that he was deprived of ineffective assistance of counsel in various regards.  (Doc. No. 179.)  Though Petitioner was represented by three (3) separate court-appointed attorneys from the time of his arrest through sentencing, he has clarified that his ineffective assistance claims relate to the representation of his trial and sentencing counsel, Anne Gingrich Cornick.  (Doc. No. 207.)  Specifically, Petitioner asserts the following claims regarding Ms. Cornick's representation:

> Ground One: Counsel provided ineffective assistance by allowing Petitioner's trial to be continued;
>
> Ground Two: Counsel provided ineffective assistance by failing to timely inform the Government that Petitioner wanted to accept a plea agreement and failing to properly inform Petitioner of his sentencing exposure;
>
> Ground Three: Counsel provided ineffective assistance by failing to advocate on Petitioner's behalf at sentencing with regard to Petitioner's designation as a career offender;
>
> Ground Four: Counsel provided ineffective assistance by failing to argue for a jury instruction on the element of possession, or, in the alternative, by failing to object to the jury instruction the Court provided on possession;
>
> Ground Five: Counsel provided ineffective assistance by failing to adequately investigate the charges against Petitioner and consult with Petitioner, leading to a failure to call favorable witnesses; and
>
> Ground Six: Counsel provided ineffective assistance by failing to question a juror about the juror's impartiality or object to the juror's continued service after the juror overheard comments in the elevator between the prosecutor and another attorney.

(Doc. No. 207 at 2-3.)

The Court held an evidentiary hearing on this matter on October 23, 2020.  (Doc. No. 256.)  Petitioner's counsel filed a brief in support of his motion to vacate on December 7, 2020.  (Doc. No. 261.)  After being granted an extension of time to file a response (Doc. No. 262), the Government filed its brief in opposition on January 4, 2021 (Doc. No. 264).  Petitioner did not file a reply, and, as the time for filing one has expired, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).  However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a Section 2255 motion.  See 28 U.S.C. § 2244.

In order to establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir.

2001). This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. See id. To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." See id. This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. (quoting Strickland, 466 U.S. at 694). Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." See id. (quoting Strickland, 466 U.S. at 694).

### III. DISCUSSION

As noted, supra, Petitioner asserts six claims of ineffective assistance of counsel. The Court considers each of these in turn.

#### A. Ineffective Assistance of Counsel

##### 1. Ground One: Allowing the Trial to be Continued

Petitioner first contends that Ms. Cornick rendered ineffective assistance by "allowing" his trial to be continued, which Petitioner asserts "provided the [G]overnment with the opportunity to obtain favorable witness testimony that otherwise would not have been available if the trial had not been continued." (Doc. No. 207 at 2.) As an initial matter, the Court notes that Petitioner's briefing contains neither arguments nor factual allegations in support of such an assertion. The record indicates that Petitioner's trial was continued on seven (7) occasions by Petitioner's first two (2) court-appointed attorneys—neither of whom Petitioner alleges were

ineffective in their representation—and only once by Ms. Cornick. (Doc. Nos. 20, 34, 47, 55, 65, 88, 91.) Ms. Cornick testified at the evidentiary hearing that she was unaware of the Government developing any additional evidence in the limited period between when she moved for a continuance and the rescheduled trial date of July 9, 2012, and further testified that she was prepared to proceed with trial in July. (Doc. No. 258 at 66-67.) Further, the record reflects that it was Petitioner, on his own behalf, who insisted that trial not proceed as scheduled on July 9, 2012, resulting in a continuance to September 2012. (Doc. No. 116.) Indeed, Petitioner sought to delay trial yet again in September 2012, but the Court denied his request for any further continuance. (Doc. No. 163 at 15.)

Upon review of the record and the applicable law, the Court finds that Petitioner's first claim for ineffectiveness lacks merit. First, the Court notes that Ms. Cornick was appointed as Petitioner's counsel merely six (6) weeks prior to her filing her first and only motion for a continuance on behalf of Petitioner, who has otherwise made no argument to support a finding that this strategic decision was unreasonable. See Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (noting that "counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better"). Even if Petitioner had demonstrated that Ms. Cornick's request for a continuance was unreasonable, Petitioner has provided no evidence that he was prejudiced by the resulting delay, i.e., from May 7, 2012 until July 9, 2012. The Court finds no support in the record for Petitioner's assertion that the Government developed additional evidence and witnesses against Petitioner during this brief delay, nor does Petitioner clarify what evidence the Government presented at trial that it did not already have prior to Ms. Cornick's request for a continuance. Accordingly, Petitioner is not entitled to relief on this basis.

## 2. Ground Two: Errors Regarding Plea Agreement and Sentencing Exposure

As to his second ground for relief, Petitioner submits that counsel was ineffective in the following ways: (1) failing to timely inform the Government that Petitioner wanted to accept a plea agreement; (2) failing to properly inform Petitioner of his sentencing exposure; and (3) incorrectly advising Petitioner that he faced a lower sentence following conviction at trial than he received. (Doc. No. 207 at 3.) Petitioner argues that the Government offered a negotiated plea agreement for a five-year (5) term of imprisonment to his first court-appointed counsel, and that he wanted to accept it, but was never afforded an opportunity to do so. (Doc. No. 258 at 5-6.) At the evidentiary hearing, Petitioner testified that he did not want to proceed to trial but did so because Ms. Cornick gave him the impression that she could "win at trial." (Id. at 7, 10, 35.) Petitioner further testified that Ms. Cornick did not explain his potential sentencing exposure accurately and erroneously informed him that he faced a maximum sentence of fifteen (15) years' imprisonment. (Id. at 9, 30.)

It is clearly established that defense counsel "has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." See Missouri v. Frye, 566 U.S. 134, 145 (2012). To this end, counsel must advise a client in such a way that the client can "make a reasonably informed decision whether to accept a plea offer." See United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). Potential sentencing exposure is a factor that must be discussed during this advisory process. See United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015). Where counsel's advice leads to the rejection of a plea offer, a defendant must demonstrate that but for the advice, the offer would have been presented to the court. See Lafler v. Cooper, 566 U.S. 156, 164 (2012).

Ms. Cornick testified at the evidentiary hearing that the only plea agreement offered by the Government was an agreement for a flat ten-year term of imprisonment in exchange for Petitioner's plea of guilty to a charge of possession with intent to distribute crack cocaine. (Doc. No. 258 at 50.) Further, Ms. Cornick testified that she had multiple conversations with Petitioner—both in-person and in written correspondence—where she discussed his sentencing exposure and the ten-year plea agreement. (Id. at 52-56, 58, 61, 67, 71, 72.) Documentary evidence in the record includes Ms. Cornick's written correspondence with Petitioner prior to the July 2012 trial date, wherein she explicitly refers to his potential sentencing exposure and the availability of a plea agreement on multiple occasions. See, e.g., (Doc. Nos. 257-1, 257-4, 257-5.) For example, Ms. Cornick, in recapping an in-person conversation with Petitioner, wrote on June 19, 2012 that:

> We reviewed the four counts against you, and discussed the mandatory penalties and likely guidelines that will be associated with each charge should you be found guilty at trial. I explained to you that your guidelines <u>will likely go to life</u>, and you expressed that you had reviewed these issues with your previous attorneys and that you did not wish to discuss them further. I informed you that the Government will likely file notice that it will be seeking enhancements of the mandatory terms on the firearms charges, which you were not willing to discuss in any detail with me. . . . I understand that you are committed to going forth with a trial. As I explained, that is your absolute right to decide. I will reiterate that <u>there is an option for you to plead rather than go to trial, which could result in a much lesser sentence than what you could receive if you are found guilty</u>. It is my duty as your attorney to explain that to you, and to be sure you understand that. If you have any questions regarding these options and the mandatory versus guideline sentences associated with your charges, I urge you to let me know immediately.

(Doc. No. 257-1 at 1, 4) (emphasis added). Similarly, on July 8, 2012, in a letter Ms. Cornick indicated she would be hand delivering to Petitioner, she wrote:

> <u>I believe it is to your benefit to consider the plea offer that remains on the table</u>. I am adding this addendum to the previous letter I wrote to you discussing the lengthy sentences you would be facing if convicted, so that you can consider the plea offer on the table in direct light of the possible consequences of conviction at trial. <u>The plea offer on the table is still for a flat 10 years</u>. As you and I have discussed

8

>previously, <u>your guidelines at counts 1, 3, and 4 will go up to life in prison</u>. The mandatory sentences we have discussed are only the bottom of what a judge could choose to sentence you to.

(Doc. No. 257-5 at 1) (emphasis added).

As an initial matter, Petitioner's assertion that there was ever a plea agreement for five (5) years is unsupported by the record. Indeed, the Government flatly denies that such a plea offer ever existed and insists that the only plea agreement ever offered was for ten years, and Petitioner has provided no evidence of the existence of any such agreement. (Doc. No. 264 at 21-22.) Further, Petitioner has provided no evidence that he was misinformed regarding his sentencing exposure. Ms. Cornick's testimony at the evidentiary hearing, as well as the written correspondence documenting conversations she had with Petitioner prior to trial, indicate that she clearly understood that Petitioner faced a potential sentence up to life in prison if convicted of all charges at trial and communicated that fact to Petitioner on multiple occasions. Further, it is clear from the record that it was Petitioner who insisted on going to trial despite the severity of his sentencing exposure, whereas it was Ms. Cornick who had urged him to consider accepting the plea agreement. In light of the record evidence, the Court cannot credit Petitioner's self-serving testimony at the evidentiary hearing that he did not want to go to trial and was misled regarding his sentencing exposure. Therefore, the Court finds that Petitioner has not provided any evidence demonstrating that Ms. Cornick was ineffective in her representation with regard to the plea agreement or advice about Petitioner's sentencing exposure. Accordingly, Petitioner is not entitled to relief on this basis.

### 3. Ground Three: Ineffective Representation at Sentencing

Concerning his third claim of ineffective assistance of counsel, Petitioner maintains that counsel was ineffective for "declining to advocate on his behalf with respect to the contents of

the Presentence Investigation Report [("PSR")]." (Doc. No. 207 at 3.) He asserts that Ms. Cornick should have objected to his designation as a career offender, which designation was based on two prior state convictions. (Id.) This claim, too, is without merit.

The Sentencing Guidelines provide that a defendant may be deemed a "career offender" if he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." See U.S.S.G. § 4B1.1(a). The Guidelines define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Id. § 4B1.2. A review of the record indicates that Petitioner was determined to be a career offender as a result of his felony convictions for controlled substance offenses from 1991 and 1995. (Doc. Nos. 154, 257-6.) Petitioner requested that Ms. Cornick object to his designation as a career offender on the basis that the Government had committed fraud by forging his prior record in bad faith. (Doc. No. 257-6 at 3.) Ms. Cornick refused to make such an argument because she had no evidence that Petitioner's criminal history was forged and therefore lacked a good faith basis to object to the career-offender designation. (Id.) Accordingly, because "counsel cannot be deemed ineffective for failing to raise a meritless claim," see Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000), Petitioner has failed to demonstrate that Ms. Cornick's representation was deficient with respect to his sentencing, and his third claim for relief is unavailing.

### 4. Ground Four: Failing to Request a Jury Instruction on Possession

As to his fourth ground for relief, Petitioner contends that counsel was ineffective for "failing to argue for a jury instruction on the element of possession to highlight [his] status as a victim of the robbery at his residence." (Doc. No. 207 at 3.) In the alternative, Petitioner contends here that counsel was ineffective for failing to object to the jury instruction the Court provided on possession "which did not allude to [Petitioner's] status as a victim of the same robbery at his residence." (Id.) Petitioner has not proposed any alternative jury instruction, nor has he cited to any legal authority in support of this otherwise vaguely asserted claim. The record reflects that Ms. Cornick submitted proposed jury instructions that tracked the Third Circuit's Model Criminal Jury Instructions, including with regard to the element of possession. Petitioner provides no explanation as to how Ms. Cornick's proposed jury instructions were unreasonable. Nor has Petitioner offered any basis upon which Ms. Cornick would have been obligated to object to the final jury instructions. As the Third Circuit has observed, "we have a hard time concluding that the use of our own model instruction can constitute error." See United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010). Accordingly, the Court finds no basis to determine that Ms. Cornick's representation with respect to jury instructions fell below an objectively reasonable standard or that Petitioner was in any way prejudiced by the jury instructions that were ultimately read to the jury. Therefore, Petitioner is not entitled to relief on this basis.

### 5. Ground Five: Failure to Prepare for Trial or Call Favorable Witnesses

Regarding his fifth ground for relief, Petitioner contends that Ms. Cornick was ineffective for failing to adequately investigate the charges against Petitioner and consult with Petitioner, leading to a failure to call favorable witnesses. (Doc. No. 207 at 3.) Specifically, Petitioner

11

alleges that if Ms. Cornick had sufficiently investigated his case, she would have called as a witness a K-9 handler police officer who was present the night of Petitioner's arrest. (Doc. No. 261 at 9.)

To prevail on an ineffectiveness claim regarding witness testimony, a defendant must establish that the witness testimony would have been both material and favorable to him. See Collins v. Meyers, 77 F. App'x 563, 566 (3d Cir. 2003). Notably, counsel is not obligated to interview or call every potential witness in a case. See Lewis v. Mazurkiewicz, 915 F.2d 106, 113 (3d Cir. 1993) (noting that "counsel [is] simply required to exercise reasonable professional judgment in deciding whether to interview [a witness]").

The Court's review of the record in this case indicates that Petitioner: (1) never told Ms. Cornick about the K-9 handler officer; (2) made no indication that the officer may have been a potentially relevant witness; and (3) did not suggest to what the officer may have testified. (Doc. No. 258 at 95.) Further, Ms. Cornick reviewed police reports during her trial preparation and did not find anything that would have indicated that the officer could provide relevant testimony. (Id.) In addition, the record demonstrates that Petitioner readily informed Ms. Cornick about potentially favorable witnesses, and Ms. Cornick attempted to follow up on all witnesses that Petitioner brought to her attention. (Id. at 57-58; Doc. Nos. 257-2, 257-3, 257-4.) Petitioner has not demonstrated that Ms. Cornick's failure to call this officer was unreasonable, nor has he indicated how he was prejudiced by the lack of the officer's testimony at trial. Accordingly, the Court finds that Petitioner is not entitled to relief on this basis.

### 6. Ground Six: Failure to Question a Juror Regarding Impartiality

As to his sixth and final ground for relief, Petitioner argues that counsel was ineffective "by failing to question Juror No. 12 about whether [she] could continue to impartially serve on

the jury after hearing certain comments in the elevator between the prosecutor and another attorney," or, in the alternative, "by otherwise failing to object to Juror No. 12 continuing to serve on the jury." (Doc. No. 207 at 3-4.) The facts underlying this claim are straightforward. On the morning of the third day of trial, a juror advised the Court that she had overheard a brief conversation between the prosecutor and another attorney that took place in an elevator. The Court held an on-record conference in chambers with the lawyers and the juror, whereupon the following colloquy took place:

>THE COURT: When did the contact occur?
>
>MR. PFANNENSCHMIDT:[1]  In the elevator this morning.
>
>THE COURT:  This morning?
>
>MR. PFANNENSCHMIDT:  Yes.
>
>THE COURT:  And what happened?
>
>MR. PFANNENSCHMIDT:  I was -- there was another attorney in the elevator who asked me a couple of questions about the case.
>
>THE COURT:  All right.  Let me stop you there and ask Juror Number 12, did you overhear the conversation?
>
>JUROR NUMBER 12:  Yes.
>
>THE COURT:  What did you hear?
>
>JUROR NUMBER 12:  I heard her asking if [Petitioner] was behaving himself.
>
>THE COURT:  And did you hear anything else?  What was the response, if you heard it?
>
>JUROR NUMBER 12:  He said yes and that [Ms. Cornick] was doing a good job for him.
>
>THE COURT:  Is that it?

---

[1] Mr. Pfannenschmidt prosecuted this case on behalf of the Government.

13

>MR. PFANNENSCHMIDT: That's it.
>
>THE COURT: All right. You've heard my instructions to you about keeping an open mind and only being influenced by the evidence, and I described to you what the evidence is, the testimony of the witnesses and the exhibits that would be received in court. Having overheard that conversation, do you think you'll be able to follow my instruction on the law?
>
>JUROR NUMBER 12: Absolutely.
>
>THE COURT: You'll be uninfluenced by what you heard in the elevator?
>
>JUROR NUMBER 12: Totally uninfluenced.
>
>THE COURT: Okay. Counsel, do you want to inquire?
>
>MS. CORNICK: I have no inquiries, Your Honor, on behalf of the defense.
>
>MR. PFANNENSCHMIDT: I don't.
>
>THE COURT: All right. Juror Number 12, thank you.

(Doc. No. 166 at 3-4.)

Nothing in this colloquy, or elsewhere in the record, indicates that Ms. Cornick failed to provide effective assistance. Although Petitioner contends that Ms. Cornick should have done more to question the juror, it is unclear what Petitioner believes she should have asked. Nor has he shown that the juror's impartiality was in jeopardy based on overhearing a non-substantive conversation. Ms. Cornick testified at the evidentiary hearing that she was satisfied that the juror could remain impartial, that she did not feel it would have been in Petitioner's interest to object to the juror's continued service, and that she did not believe she had a good-faith basis to request that the juror be removed. (Doc. No. 258 at 79.) Further, Petitioner has proffered no evidence nor made any argument that would allow the Court to find the juror was biased and that he was prejudiced by the juror's continued service. Counsel will not be deemed ineffective for failing to

14

seek to remove a juror where there is no basis in the record that would allow a finding that the juror was biased or otherwise unduly influenced. See, e.g., Brown v. Warden, SCI-Retreat, 104 F. App'x 232, 234 (3d Cir. 2004) (finding that where there was no evidence of actual bias, there was no prejudice as a result of any potential ineffective assistance). Accordingly, the Court finds that Petitioner has failed to demonstrate that Ms. Cornick's representation was ineffective with respect to this incident and is not entitled to relief on this basis.

### B. Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because the Court concludes that Petitioner's claims of ineffective assistance are meritless, the Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. Accordingly, a COA will not issue in this case.

### V. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's Section 2255 motion (Doc. No. 179) and will not issue a COA. An appropriate Order follows.